UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JIMMY DALE CARVER,                         )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )          Case No. 12-CV-0614-CVE-TLW
                                           )
CAROLYN W. COLVIN,                         )
Acting Commissioner of the                 )
Social Security Administration,            )
                                           )
                    Defendant.             )

OPINION AND ORDER

On February 14, 2014, Magistrate Judge T. Lane Wilson entered a report and recommendation (Dkt. # 31) recommending that the Court affirm the decision of the Commissioner of the Social Security Administration to deny plaintiff's claim for disability benefits. Plaintiff has filed an objection to the report and recommendation, and requests either an award of benefits or a remand of the case for further administrative proceedings. Dkt. # 32. Plaintiff argues that the administrative law judge (ALJ) incorrectly determined his residual functional capacity (RFC), failed to properly formulate his hypothetical questions to the vocational expert (VE), failed to properly consider medical evidence and a third-party function report, and weighed plaintiff's credibility incorrectly. Id.

I.

On November 13, 2009, plaintiff applied for disability benefits, Dkt. # 10-5, at 2-4, alleging that he has been unable to work since March 1, 2003, because of his disabling condition. Id. at 5. Plaintiff alleges that an injury to his T-10 vertebra and his depression limit his ability to work. Dkt.

# 10-6, at 22.  Plaintiff's claim was initially denied on February 26, 2010, and again on reconsideration on May 3, 2010.  Dkt. # 10-3; Dkt. # 10-4, at 2-5, 7-8.

Plaintiff requested a hearing before an ALJ, and a hearing was held on March 24, 2011.  Dkt. # 10-4, at 10-11; Dkt. # 10-2, at 43.  Plaintiff appeared at the hearing and was represented by an attorney. Dkt. # 10-2, at 43.  Plaintiff was twenty-six years old on the date of the hearing.  Compare id. at 45, with id. at 49-50.  He lives with his fiancée, and their household income consists of the fiancée's government benefits. Id. at 52, 56.  Plaintiff has a GED and some vocational training, but he does not have a college degree.  Id. at 50.  At the time of the hearing, plaintiff was not taking any medications.  Id. at 61.  He stated that he could not afford any treatment and was not receiving any, beyond group therapy stemming from a felony conviction.  Id. at 60-61.  Plaintiff stated that he worked as a lineman in a factory and as part of a sanitation team at a mushroom farm.  Id. at 56-57.  Plaintiff also briefly worked for Penmac Personnel Services, but quit working due to discomfort in his back.  Id. at 55.  That job, at which plaintiff worked one day a week for no more than a month, entailed pushing wheelbarrows weighing from two to five hundred pounds.  Id. at 55, 62.

Plaintiff sleeps approximately ten hours per night.  Id. at 57-58.  He has a driver's license and drives approximately once a day.  Id. at 50-51.  Plaintiff claimed he has problems with his vision and that his driver's license has a left outside rearview mirror restriction.  Id. at 51.  Plaintiff helps with household chores such as cooking and cleaning.  Id. at 58.  Plaintiff is able to bathe and dress himself, with reminders.  Id.  Plaintiff reads magazines and books, watches television, and plays video games.  Id. at 59.  Plaintiff states that he can pick up objects weighing up to fifteen pounds, walk for thirty minutes at a time, and sit for thirty to forty-five minutes at a time.  Id. at 60.  He claims to have trouble maintaining his balance, due to his knee.  Id. at 52.

2

The ALJ called a VE, Michael J. Wiseman, to testify. Wiseman testified that all of plaintiff's former employment had a specific vocational preparation (SVP) level of 2. Id. at 63. The ALJ posed a hypothetical question[1] to the VE. Id. at 64-65. The VE testified that the hypothetical claimant could perform light work as an electronics assembler or housekeeper and sedentary work as a semiconductor assembler or clerical mailer. Id. at 65-66.[2] The ALJ then added an additional limitation of a sit/stand option and an additional limitation of close supervision. Id. at 67-68. The VE testified that either limitation would preclude plaintiff from working. Id.

On April 14, 2011, the ALJ entered a written decision denying plaintiff's claim for disability benefits. Dkt. # 10-2, at 19-42. The ALJ found that plaintiff had not engaged in substantial gainful

---

[1]     The question was:

> [A]ssume 25 years of age on the protective filing date here; assume now 26 years of age; assume an individual with a high school education in the form of a GED, assume for a moment the past work you've described without making any findings of SGA because I'm not sure that level rises to SGA level work. Assume nevertheless we're looking at light work or sedentary work only in the first hypothetical. Assume any -- some additional factors here. Assume no climbing of ropes, ladders, scaffolds, unprotected heights, or dangerous machinery parts; assume also an individual limited to understanding, remembering, and carrying out simple instructions in a work-related setting; assume any interaction with coworkers and supervisors under a routine supervision; assume interaction with the public only occasionally; and you can assume symptoms from a variety of sources. It could be pain, could be fatigue, could be depression, any of those, all of them variously described and of sufficient severity. So it's to be noticeable to that person at all times and able to remain attentive, responsive, and perform work assignments within the above limits I've just given you.

Dkt. # 10-2, at 65.

[2]     The VE also testified that plaintiff would be limited to the sedentary jobs if the following were also assumed: "walking or standing two hours of an eight-hour day; sitting six hours of an eight-hour day; postural limits be it bending and stooping, kneeling, crouching, crawling occasionally; only overhead reaching only [sic] occasionally; [and] use of foot pedals only occasionally."

activity since his application date.  Id. at 25.[3]  The ALJ found that plaintiff had the severe impairments of "back pain in the thoracic and lumbar spine; obesity; mood disorder, not otherwise specified; history of substance abuse, in remission; personality disorder, not otherwise specified (antisocial features), and reduced visual acuity in the left eye (which may be more than *de minimus* [sic])."  Id. at 25-26. With regard to plaintiff's vision, the ALJ determined that that impairment caused "no more than minimal limitation in the ability to perform basic work activities."  Id. at 26.[4]

The ALJ found that none of those impairments, nor any combination of those impairments, met or medically equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.[5] In determining whether plaintiff met or medically equaled the listed impairments, the ALJ concluded that plaintiff has mild restrictions in activities of daily living, moderate difficulties in social function, and moderate difficulties with regard to concentration, persistence, or pace.  Id. at 27-28.  There was no evidence of decompensation in the record.  Id. at 28.  To reach these conclusions, the ALJ relied on the findings of the consultive medical examiner, the statements of plaintiff's fiancée, and plaintiff's own statements.  Id. at 27-28.

_____

[3]     Plaintiff had briefly worked after the application date, but that work was not substantial gainful activity.  Dkt. # 10-2, at 25.

[4]     Plaintiff had been diagnosed as blind in his left eye.  Dkt. # 10-2, at 26.  However, this diagnosis was based on plaintiff's uncorrected visual acuity of right eye 20/20 and left eye 20/200.  Id.  Plaintiff was not wearing glasses at the time of that examination.  Id.  However, plaintiff uses glasses prescribed by a doctor and has not received any other treatment for vision problems.  Id.

[5]     The ALJ specifically considered Listing 1.04, Listing 12.04, Listing 12.06, Listing 12.08, and Listing 12.09.  Dkt. # 10-2, at 26-27.

4

The ALJ then reviewed plaintiff's testimony and the medical evidence.  Id. at 31-36.[6] Plaintiff had undergone a consultive exam on January 14, 2010.  Id. at 31.  Plaintiff's chief complaint was that he had been experiencing dorsal pain since 1999.  Id. at 31-32.  This pain was the result of a compression fracture sustained playing football.  Id. at 32. The examining physician determined that plaintiff could walk normally, but was tender in the dorsal and lumbar midline.  Id. Plaintiff "had good full range of motion of the spine, but with pain on range of motion testing of the lumbosacral spine."  Id.  The physician determined that plaintiff "had no sensory loss, and deep tendon reflexes were 2/4 bilaterally."  Id.  The physician further determined that plaintiff could "read, write, sit up, transfer, reach, bend, manipulate objects with his hands, do activities of daily living, carry and lift, squat and kneel."  Id.  The examining physician diagnosed plaintiff with lower dorsal pain, a history of depression, and blindness in the left eye.  Id.

Plaintiff's primary care treatment was at Northeastern Tribal Health.  Id.  On March 29, 2010, plaintiff complained of back pain.  Id.  A physical examination revealed point tenderness over the spinous process of T-10.  Id.  X-rays taken at that time "revealed mild facet arthorosis bilaterally at the L5 level, Schmorl nodes at L4-L5 and L5-S1, and a severe age indeterminate compression deformity at the T10 level."  Id.  Tramadol and ibuprofen were prescribed for plaintiff's pain.  Id. Plaintiff later stated to a physician's assistant that the Tramadol and ibuprofen did not help much with his back pain.  Id.  The physician's assistant stated "that he had nothing to offer [plaintiff] for his lower back pain," and discontinued the medication Id.  The physician's assistant then suggested a follow-up in one year, or as required.  Id.

---

[6]      The ALJ took note of plaintiff's obesity during this stage.  Dkt. # 10-2, at 32-33.

On January 12, 2010, plaintiff underwent a psychological consultive examination. Id. at 33. Plaintiff's primary complaints were depression, anxiety, and vague hallucinatory experiences. Id. The psychologist found that plaintiff was cooperative but "had a withdrawn manner and an overly blunted affect." Id. The psychologist stated that plaintiff's General Intellectual Ability Estimate was "borderline range vs. low average range with learning disabilities." Id. The psychologist believed plaintiff was cooperative, but somewhat vague, and that plaintiff may have been minimizing behavior and substance-related difficulties. Id. at 34.

The psychologist diagnosed plaintiff with

psychiatric disorder, not otherwise specified, provisional, Rule Out; mood disorder, not otherwise specified; learning disorder, not otherwise specified, provisional, Rule Out; history of methamphetamine, opioid, and cannabis dependence, full sustained remission (remission status per [plaintiff's] report); personality disorder, not otherwise specified (antisocial features); and borderline intellectual functioning, provisional, Rule Out.

Id. The psychologist assigned plaintiff a Global Assessment of Functioning (GAF) Scale score of 45. Id. The ALJ accepted the psychologist's definitive diagnoses, but rejected the psychologist's provisional diagnoses. Id. The psychologist also included opinion evidence as to plaintiff's estimated capabilities and diagnoses. Id. at 35-36.[7] The ALJ accorded great weight to that opinion evidence. Id. at 36. The ALJ also accorded great weight to the opinions of the medical consultants and consultive examiners of the State Disability Determination Services, in terms of plaintiff's mental limitations. Id. at 37.

---

[7]     Those estimated capabilities included plaintiff being able to understand and remember simple instructions, concentrate and persist on moderately complex tasks, interact with the public in a limited manner, interact with his supervisors and co-workers in a limited manner, and adapt to a simple work environment. Dkt. # 10-2, at 35.

The ALJ also considered plaintiff's credibility. Id. at 34-35. Because of discrepancies between plaintiff's alleged symptoms and the objective documentation on file, the ALJ determined that plaintiff's "statements about his impairments and their impact on his ability to perform activities of daily living and basic functions are not entirely credible." Id. at 34. The ALJ found the fact that plaintiff's allegedly limited daily activities could not be objectively verified with a reasonable degree of certainty weighed against a finding that plaintiff was credible, as did the fact that, even if plaintiff's activities of daily living were limited, relatively weak medical and other evidence made it difficult to attribute plaintiff's limitations to plaintiff's medical condition (as opposed to other reasons). Id. at 34-35. The ALJ noted that plaintiff had not received the degree of medical care expected for a completely disabled individual and that plaintiff's medical care had been routine and conservative in nature. Id. While acknowledging that plaintiff claims to be unable to afford care, the ALJ found that "[t]here are public facilities available to those who do not have insurance or who are unable to pay for medical care," and observed that plaintiff has provided no evidence that he has sought or been denied medical treatment from indigent care facilities or his treating sources. Id. The ALJ found this failure to seek medical treatment inconsistent with the existence of a constant and disabling condition. Id. Additionally, the ALJ determined that while plaintiff's medical record did suggest pain, the medical records did not suggest that the pain was so severe as to limit plaintiff to the degree he alleges. Id. The ALJ also accorded great weight to the psychologist's determination that plaintiff was only partially reliable. Id. at 36. The ALJ concluded that plaintiff was partially credible. Id. at 35. The ALJ did find credible plaintiff's statement that he had not used illegal substances since being released from prison. Id. at 36.

The ALJ mentions two function reports.  Id. at 28.  The ALJ cites to plaintiff's function report when determining plaintiff's mental limitations.  In particular, the ALJ recognizes that the report states that plaintiff is limited due to pain, not because of a mental condition.  Id.  The ALJ also reviewed a third-party function report submitted by plaintiff's fiancée.  Id.

Based on the objective medical evidence and other evidence, the ALJ determined plaintiff's RFC.  Id. at 29-30.

> He is limited to light and sedentary exertion work.  He is unable to climb ropes, ladders, and scaffolds, and is unable to work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts.  He is able to understand remember, and carry out simple instructions in a work-related setting, and is able to interact with co-workers and supervisors, under routine supervision. He is unable to interact with the public more than occasionally.  He is afflicted with symptoms from a variety of sources to include moderate intermittent pain and fatigue, depression, and allied disorders, all variously described, that are of sufficient severity so as to be noticeable to him at all times, but nevertheless is able to remain attentive and responsive in a work-setting and would be able to perform work assignments within the above-cited limitations.

Id. (italics removed).  The ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."  Id. at 31.

The ALJ determined that plaintiff did not have any past relevant work.  Id. at 37.  However, the ALJ determined that a significant number of jobs exist that plaintiff could perform.  Id. at 38. The ALJ stated, based on the testimony of the VE, that plaintiff could perform the requirements of electronics assembler, housekeeper, semiconductor assembler, and clerical mailer.  Id. at 38-39. The ALJ concluded that plaintiff was not disabled.  Id. at 39.

On August 14, 2011, the Appeals Council denied plaintiff's request for review. Id. at 2-4. When the Appeals Council denied review, the ALJ's decision became the Commissioner's final decision. Wiederholt v. Barnhart, 121 Fed. App'x 833, 836 (10th Cir. 2005).[8]  Plaintiff filed this case seeking judicial review of the Commissioner's decision (Dkt. # 2), and the matter was referred to a magistrate judge for a report and recommendation.  After the matter was fully briefed, the magistrate judge entered a report and recommendation recommending that the Commissioner's decision to deny plaintiff's claim for disability benefits be affirmed. Dkt. # 31.  Plaintiff has filed an objection (Dkt. # 32) to the report and recommendation, but defendant has not filed a response to plaintiff's objection and the time for defendant to respond has expired.

## II.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation.  However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999).  The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part.  Fed. R. Civ. P. 72(b).

---

[8]    This and all other unpublished opinions are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

# III.

The Social Security Administration has established a five-step process to review claims for

disability benefits.  <u>See</u> 20 C.F.R. § 404.1520.  The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in
> substantial gainful activity." [<u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004)].  If
> not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe
> impairment or impairments."  *Id*.  An impairment is severe under the applicable regulations
> if it significantly limits a claimant's physical or mental ability to perform basic work
> activities.  *See* 20 C.F.R. § 404.1521.  At step three, the ALJ considers whether a claimant's
> medically severe impairments are equivalent to a condition "listed in the appendix of the
> relevant disability regulation."  *Allen*, 357 F.3d at 1142.  If a claimant's impairments are not
> equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's
> impairments prevent her from performing her past relevant work.  *See Id.*  Even if a claimant
> is so impaired, the agency considers, at step five, whether she possesses the sufficient
> residual functional capability to perform other work in the national economy.  *See Id.*

<u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009).  The ALJ decided this case at step five of the

analysis and found that sufficient jobs existed in the national economy that plaintiff could perform,

given his RFC, age, work experience, and education.  Dkt. # 10-2, at 38.

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ.

<u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008).   Instead, the Court reviews the record

to determine if the ALJ applied the correct legal standard and if his decision is supported by

substantial evidence. <u>Id.</u> Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  <u>O'Dell v. Shalala</u>, 44 F.3d 855, 858 (10th Cir. 1994).

"A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record

or if there is a mere scintilla of evidence supporting it."  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1214

(10th Cir. 2004).  The Court must meticulously examine the record as a whole and consider any

evidence that detracts from the Commissioner's decision.  <u>Washington v. Shalala</u>, 37 F.3d 1437,

1439 (10th Cir. 1994).

Plaintiff raises three objections to the magistrate judge's report.  Dkt. # 32.  Plaintiff argues that the ALJ's RFC determination and hypothetical questions to the VE were flawed, that the ALJ failed to properly consider evidence, and that the ALJ's incorrectly assessed plaintiff's credibility. Id.

**A.  Hypothetical Questions to Vocational Expert and RFC Determination**

Plaintiff argues that the ALJ failed to include all the findings of the nonexamining, nontreating expert reviewers of the State agency in his hypothetical to the VE.  Id. at 1.  The reviewers marked in Section I of their report that plaintiff was moderately limited in his "ability to accept instructions and respond appropriately to criticism from supervisors."  Dkt. # 10-7, at 18. Section I of the reviewers' report is entitled "Summary Conclusions" and "is for recording summary conclusions."  Id. at 17.  The section's instructions state that a "[d]etailed explanation of the degree of limitation . . . is to be recorded in Section III (Functional Capacity Assessment)."  Id.  Section III of the reviewers' report explains and elaborates on the reviewers' summary conclusions in narrative form.  Id. at 19.  This section states: "Claimant can perform simple tasks with routine supervision. Claimant can relate to supervisors and peers on a superficial work basis.  Claimant can relate superficially to the general public on a limited basis.  Claimant can adapt to a simple work situation."  Id.

Neither the ALJ's hypothetical questions, nor his decisional RFC, explicitly included a moderate limitation in plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors.  Dkt. # 10-2, at 29-30, 64-68.  Plaintiff argues that failure to include this limitation is contrary to the dictates of Haga v. Astrue, 482 F.3d 1205 (10th Cir. 2007).  However, Haga applies only where an ALJ has rejected some of an expert's restriction findings.  Id. at 1208.  Here,

11

the ALJ did not reject any of the reviewer's findings.  The ALJ's hypothetical questions included the assumption of "an individual limited to understanding, remembering, and carrying out simple instructions in a work-related setting" and the assumption of "any interaction with coworkers and supervisors under a routine supervision." Dkt. # 10-2, at 64.[9]  These assumptions are consistent with the expert reviewer's functional capacity assessment, which incorporates the summary conclusion that plaintiff has a moderate limitation in his ability to accept instructions and respond appropriately to criticism.  Dkt. # 10-7, at 17-19.  An ALJ does not have to use the exact language of the summary conclusion in order to accept it.  See Haga, 482 F.3d at 1208 (stating that an RFC determination that a claimant was "limited to 'simple repetitive tasks' with 'only incidental contact with the public' and 'no requirement for making change'" constitutes an adoption of a reviewer's conclusion that claimant possessed moderate limitations in her ability to "'[u]nderstand and remember detailed instructions,' '[c]arry out detailed instructions,' or '[i]nteract appropriately with the public'") (alterations in original).  Because the ALJ did not reject the expert's findings, properly questioned the VE in regard to them, and included them within his RFC, Haga is inapplicable and the report and recommendation should not be rejected on this ground.

Plaintiff also argues that plaintiff's limitations of social functioning and of concentration, persistence, and pace must be included in the ALJ's hypothetical questions to the VE.  Dkt. # 32, at 4.  The ALJ found that, with regard to concentration, persistence, or pace, claimant has moderate difficulties.  Dkt. # 10-2, at 28.  The ALJ also found that plaintiff has moderate difficulties in social

---

[9]     Plaintiff's RFC states that he "is able to understand remember, and carry out simple instructions in a work-related setting, and is able to interact with co-workers and supervisors, under routine supervision."  Dkt. # 10-2, at 30.

functioning.  Id.  These limitations are "paragraph B" limitations, used during step 2 and 3 of the

evaluation process.  Id. at 27-28.

> [T]he limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C . . . .

SSR 96-8p, 1996 WL 374184, at *4.  An ALJ is not required to include paragraph B limitations in

his questions to the VE.  See Jimison ex rel. Sims v. Colvin, 513 Fed. App'x 789, 793 (10th Cir.

2013) (holding that a hypothetical to a VE needs to contain only the claimant's functional limitations

and restrictions and is not required to include paragraph B limitations); see also Swanson v.

Barnhart, 190 Fed. App'x 655, 658 n.1 (10th Cir. 2006) (concluding that by including in a

hypothetical question to the VE that the claimant had "'marked restrictions in the ability to

understand, remember and carry out detailed instructions' and the ability 'to perform simple, but not

complex tasks under routine supervision'" -- assumptions similar to those found in the hypothetical

questions in this case -- the ALJ adequately accounted for the claimant's moderate difficulties in

13

concentration, persistence, or pace).  None of the published Tenth Circuit cases cited by plaintiff contradicts this rule.[10]

     An unpublished case does stand for the proposition that a hypothetical question must incorporate an ALJ's paragraph B limitations.  Wiederholt v. Barnhart, 121 Fed. App'x 833, 839 (10th Cir. 2005).  There, the court determined that a hypothetical question with the limitations of "simple" and "unskilled" work was too broad and unspecific to adequately incorporate the claimant's paragraph B limitations.  Id.; see also Wayland v. Chater, No. 95-7029, No. 95-7059, 1996 WL 50459, at *1-2 (10th Cir. Feb. 7, 1996) (holding that a hypothetical question assuming "unskilled" work is insufficient to account for deficiencies of concentration, persistence, or pace that occur "often").  Wiederholt is distinguishable.  The mental limitations in the ALJ's hypothetical

---

[10]    A number of these cases state only general rules and do not address non-severe paragraph B limitations.  See Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996); Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995); Hargis v. Sullivan, 945 F.2d 1482, 1491-92 (10th Cir. 1991).  The quote in Chapo v. Astrue, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) ("[T]he failure of the ALJ to include his own mental restriction would be fatal to the validity of the hypothetical to the VE."), cited to by plaintiff, refers not to paragraph B limitations, but to the restriction to "simple, unskilled work."  Id.  Wells v. Colvin, 727 F.3d 1061, 1065 & n.3 (10th Cir. 2013), stands only for the proposition that paragraph B limitations must be further analyzed by the ALJ when crafting an RFC, not that those limitations must be part of the RFC or included in a hypothetical question to a VE.  In crafting plaintiff's RFC, the ALJ throughly considered plaintiff's mental status and function, and how plaintiff's limitations would affect his capabilities. Dkt. # 10-2, at 33-37; see Wells, 727 F.3d at 1065 (stating that an ALJ's discussion of a claimant's mental function in the credibility portion of his RFC analysis may have been sufficient to fulfill his step four duty, despite being far from systematic, had it been supported by substantial evidence); see also Dkt. # 10-2, at 29 ("Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.").  Frantz v. Astrue, 509 F.3d 1299, 1303 n.3 (10th Cir. 2007), suggests, in dicta, that the ALJ should include paragraph B limitations in his RFC determination.  The opinion does not discuss what questions must be asked of a VE.  See generally id.  Additionally, a recent, albeit unpublished, decision suggests that Frantz does not even require "an ALJ's RFC assessment to mirror his step three-findings."  Beasley v. Colvin, 520 Fed. App'x 748, 754 n.3 (10th Cir. 2013).

questions in this case included assuming "an individual limited to understanding, remembering, and carrying out simple instructions in a work-related setting; [assuming] any interaction with coworkers and supervisors under a routine supervision; [and assuming] interaction with the public only occasionally." Dkt. # 10-2, at 65. That hypothetical question is far more detailed than one which merely restricts a claimant to "simple" and "unskilled" work. Additionally, it tracks the language of plaintiff's functional capacity assessment, as assessment which incorporates plaintiff's paragraph B limitations. Compare id., with Dkt. # 10-7, at 17-19. The ALJ's hypothetical questions properly accounted for plaintiff's mental limitations and the report and recommendation should not be rejected on this ground.

**B.  Medical and "Other Source" Evidence**

Plaintiff argues that the ALJ erred in failing to properly credit a GAF score and for failing to explain why he assigned it little weight. Dkt. # 32, at 7. An ALJ is not required to discuss a GAF score in making his RFC determination. Zachary v. Barnhart, 94 Fed. App'x 817, 819 (10th Cir. 2004). A GAF score of 45 "may indicate problems not necessarily related to [plaintiff's] ability to hold a job . . . and therefore standing alone, without any further narrative explanation, this rating does not support an impairment seriously interfering with [plaintiff's] ability to work." Id. Here, the ALJ stated that he carefully considered the entire record, which includes plaintiff's consultation with the psychologist who assessed plaintiff's GAF score. Dkt. # 10-2, at 29, 33-34. Additionally, the ALJ's RFC determination is not inconsistent with the psychologist's report. Compare id. at 30,

<u>with</u> Dkt. # 10-7, at 3-8.  Because the psychologist was not one of plaintiff's treating sources,[11] the ALJ's consideration of her opinion was sufficient.  <u>See</u> <u>Zachary</u>, 94 Fed. App'x at 819.

Plaintiff also argues that the ALJ failed to appropriately evaluate a third-party function report prepared by plaintiff's fiancée.  Dkt. # 32, at 9.  An ALJ must consider the opinions of non-medical sources who have not seen the plaintiff in his professional capacity.  SSR 06-03p, 2006 WL 2329939, at *6.  The ALJ clearly considered the third-party report, because he cited to it when determining plaintiff's paragraph B limitations.  <u>See</u> Dkt. # 10-2, at 28.

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939, at *6; <u>see</u> <u>also</u> <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (stating that there is no requirement that an ALJ discuss every piece of evidence; an ALJ needs only to discuss "the evidence supporting his decision," "uncontroverted evidence he chooses not to rely upon," and "significantly probative evidence he rejects").  Therefore, the ALJ is required only to ensure that his reasoning regarding the third-party report could be followed, and even that is required only if the third-party report could have affected the outcome of the case.  Here, the ALJ was not required to discuss the third-party report, because it could not have any effect on the outcome of the case.[12]  The report was substantially similar to plaintiff's report and plaintiff's

---

[11]     The GAF score of a treating physician must be analyzed.  <u>Givens v. Astrue</u>, 251 Fed. App'x 561, 567 (10th Cir. 2007).

[12]     Alternatively, it is reasonably clear what reasoning was used by the ALJ in evaluating the third-party report.  <u>See</u> Dkt. # 10-2, at 28.

16

testimony.  <u>Compare</u> Dkt. # 10-7, at 29-36, <u>with</u> <u>id.</u> at 2-9, <u>and</u> Dkt. # 10-2, at 48-62.  While such

a report may have marginally improved plaintiff's credibility, it would not have had an effect on the

outcome of the case and is not particularly probative.  <u>See</u> Dkt. # 10-2, at 35-37 (discussing how

plaintiff's report and testimony are not fully credible as they conflict with both medical evidence

and opinion evidence that the ALJ accords great weight).  No further discussion regarding the third-

party report was required of the ALJ.

## C.  Credibility Determination

Plaintiff argues that the ALJ failed to perform a proper credibility determination and that the

ALJ should have found plaintiff to be fully credible. Dkt. # 32, at 13.  "Credibility determinations

are peculiarly the province of the finder of fact," and such determinations are not to be upset "when

supported by substantial evidence."  <u>Diaz v. Sec'y of Health & Human Servs.</u>, 898 F.2d 774, 777

(10th Cir. 1990).   Nonetheless, "[f]indings as to credibility should be closely and affirmatively

linked to substantial evidence." <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988).  Factors

the ALJ may weigh in determining a claimant's credibility include:

> the levels of medication and their effectiveness, the extensiveness of the attempts
> (medical or nonmedical) to obtain relief, the frequency of medical contacts, the
> nature of daily activities, subjective measures of credibility that are peculiarly within
> the judgment of the ALJ, the motivation of and relationship between the claimant
> and other witnesses, and the consistency or compatibility of nonmedical testimony
> with objective medical evidence.

<u>Huston</u>, 838 F.2d at 1132.  An ALJ must look beyond objective medical evidence when evaluating

claims of disabling pain.  <u>Luna v. Bowen</u>, 834 F.2d 161, 165-66 (10th Cir. 1987).  However, an ALJ

does not need to provide a "formalistic factor-by-factor review of the evidence;" an ALJ needs only

to "set[] forth the specific evidence he relies on in evaluating the claimant's credibility."  <u>Qualls v.</u>

<u>Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).  Common sense should guide the review of an ALJ's

credibility determination and technical perfection is not required.  Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir. 2012).

The ALJ stated his reasoning for determining that plaintiff was only partially credible.  Dkt. # 10-2, at 34-37.  He determined that plaintiff's description of his daily activities was not particularly credible because it was not objectively verifiable and is difficult to attribute to plaintiff's medical condition, in light of the medical evidence and other evidence.  Id. at 34-35.  He determined that plaintiff had not received the type of care that a totally disabled person would generally receive.  Id. at 35.  He noted that plaintiff's care was "essentially routine and conservative in nature."  Id.  He observed that plaintiff did not receive treatment for his back until after applying for benefits.  Id.  He also noted that plaintiff's pain medications were discontinued at a later appointment and that there is no evidence that plaintiff sought additional medical treatment.  Id.  The ALJ noted that, in fact, plaintiff testified that he takes no medication for his pain.  Id.  The ALJ did consider that plaintiff has testified that he is unable to afford treatment, but noted that "[t]here are public facilities available to those who do not have insurance or who are unable to pay for medical care" and that plaintiff neither sought, nor was denied, medical treatment from indigent care facilities or his treating sources.  Id.

The ALJ also stated that plaintiff's medical records, from plaintiff's primary care provider and from plaintiff's consultive examination, fail to establish that plaintiff is limited to the extent he claims.  Id.[13]  The ALJ's report also suggests that he relied, in part, on the consultive psychologist's

---

[13]    The ALJ did acknowledge that plaintiff's injuries are severe enough to result in some limitations; the ALJ stated only that those limitations are not greater than those described in plaintiff's RFC, contrary to plaintiff's testimony. Dkt. # 10-2, at 35.

opinion that plaintiff was only partially reliable when forming his own credibility analysis.  Id. at 36.

The ALJ also considered plaintiff's work history in assessing his credibility, and he determined that it made plaintiff less credible.  Id. at 37.  He noted that plaintiff had worked only sporadically.  Id.  The ALJ noted that, at his last job, plaintiff pushed wheelbarrows weighing two to five hundred pounds.  Id.  The ALJ believed that, despite the fact that pushing the wheelbarrow hurt his back, this suggested that plaintiff would be able to do light and sedentary exertional work. Id.

The ALJ set out the specific evidence he relied on in evaluating plaintiff's credibility.  See Qualls, 206 F.3d at 1372.  He specifically considered the levels of medication taken by plaintiff, the extensiveness of his attempts to obtain relief, the frequency of his medical contacts, the nature of his daily activities, and the consistency or compatibility of nonmedical testimony with objective medical evidence.  See Huston, 838 F.2d at 1132.  He also considered plaintiff's work history.  The ALJ's credibility determination is closely and affirmatively linked to substantial evidence.  See id. at 1133.  This Court should not, and will not, upset that determination.  Diaz, 898 F.2d at 777.

Plaintiff argues that he should not have been faulted for failing to seek treatment until after applying for disability benefits.  Dkt. # 32 at 10.

> Statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p, 1996 WL 374186, at *7.  The ALJ considered plaintiff's statements to be less credible because he was not seeking treatment for his allegedly disabling pain.  Dkt. # 10-2, at 35.  The ALJ believed that a failure to seek treatment was inconsistent with the level of plaintiff's complaints. Id.  Plaintiff states that the ALJ did not address plaintiff's explanations for his failure to seek treatment.  Dkt. # 32, at 10.  He first states that the ALJ did not consider plaintiff's aversion to doctors and his dislike of sharing his symptoms with doctors.  Id.  However, the ALJ stated that if plaintiff "were in the constant and disabling condition as alleged, it is reasonable to assume [plaintiff] would exhaust every means possible to obtain relief."  Dkt. # 10-2, at 35.  While not explicitly stating such, the ALJ's statement makes clear he considers an aversion to doctors to be insufficient to stop a claimant in truly disabling pain from seeking to "exhaust every means possible to obtain relief."

Plaintiff also cites to an unpublished case, Lee v. Barnhart, 117 Fed. App'x 674, 681 (10th Cir. 2004), for the proposition that it is an ALJ's duty to determine whether financial reasons are the reason plaintiff is not seeking treatment.  Dkt. # 32, at 10.  A claimant has a legitimate excuse for failing to receive treatment if the reason for the failure is the inability to pay.  Madron v. Astrue, 311 Fed. App'x 170,  178 (10th Cir. 2009).  However, there is no error where an ALJ finds that free medical care is available and the claimant does not dispute that finding.  See Qualls, 206 F.3d at 1373 ("The ALJ specifically found that free medical care was available, however, and plaintiff does not dispute this finding.").  Here, the ALJ found that free medical care was available.  Dkt. # 10-2, at 35 ("There are public facilities available to those who do not have insurance or who are unable to pay for medical care.").  Plaintiff does not dispute this finding.  See Dkt. # 32, at 10-11; Dkt. #

20

14, at 10-11; Dkt. # 20, at 9.  The ALJ did not err in determining that plaintiff's failure to seek treatment negatively affects his credibility.

Plaintiff argues that he should not be faulted for receiving conservative care.  "Statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."  SSR 96-7p, 1996 WL 374186, at *7.  The ALJ did not err in determining that plaintiff was less credible because the level of his care is inconsistent with the level of his complaints.

Plaintiff also argues that his clinical condition is simply more painful than the ALJ believed.  Dkt. # 32, at 11-12.  This Court may not reweigh evidence to disturb the a finding of the ALJ.  Daniels v. Apfel, 154 F.3d 1129, 1135 n.8 (10th Cir. 1998).  The ALJ's finding is supported by substantial evidence, and this Court will not disturb it for this reason.

Plaintiff argues that the ALJ should not have considered plaintiff's work history in assessing plaintiff's credibility.  Dkt. # 32, at 12.  However, plaintiff has cited no Tenth Circuit authority to support his contention.  Id.  In fact, plaintiff acknowledges that Bean v. Chater, 77 F.3d 1210 (10th Cir. 1995), states that consideration of work history is proper.  Id. at 1213; Dkt. # 32, at 12.  Plaintiff argues that the Bean's underpinnings are suspect, because it is based on a ruling that is no longer good law.  Dkt. # 32, at 12.  However, the current ruling states that a credibility assessment should be based on a consideration of all of the evidence, including statements about the claimant's "prior work record and efforts to work."  SSR 96-7p, 1996 WL 374186 at *5.  The ALJ did not err in considering plaintiff's work history.

Plaintiff also takes issue with the ALJ's statement that

Although the claimant has described daily activities which are fairly limited, two factors weigh against these allegations to be strong evidence in favor of finding [plaintiff] disabled.  First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.  Second, even if [plaintiff's]

21

activities of daily living were truly limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other forms discussed in this decision.

Dkt. # 10-2, at 34-35.  Plaintiff is correct that similar language has been rejected by the Tenth Circuit as boilerplate language that fails to apply the correct standard for determining credibility (i.e., relying on evidence that is substantial and closely and affirmatively linked to credibility).  See Swanson v. Barnhart, 190 Fed. App'x 655, 657-58 (10th Cir. 2006).  But see Watashe v. Astrue, No. 09-CV-370-PJC, 2010 WL 3022913, at *8 (N.D. Okla. July 28, 2010) (holding that if, after excising the improper provisions, the ALJ's credibility analysis is supported by substantial evidence and complies with legal requirements, the credibility analysis may be affirmed.). However, Swanson is unpublished.  190 Fed. App'x 655.  A later-decided, published Tenth Circuit case rejected Swanson and held that language similar to that used by the ALJ in this case was merely a common sense observation, that a lack of objective verification could be used as a factor in evaluating a claimant's testimony, and that reversal on that issue would be inappropriate.  Keyes-Zachary, 695 F.3d at 1167-68.  As this statement of the ALJ was but one factor in his credibility determination, reversal on this issue would be inappropriate.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 31) is **accepted**, and the Commissioner's decision to deny plaintiff's claim for disability benefits is **affirmed**.  A separate judgment is entered herewith.

**DATED** this 19th day of March, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE